IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

IN ADMIRALTY

CASE NO.: 9:22-cv-80382

Travelers Property Casualty Company of America, a/s/o
GIVE IT AWAY SPORTFISHING, LLC,
a Foreign Corporation,

    Plaintiff,

vs.

BLACK DOG MARINE, INC.,
A Florida Corporation,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES**

Plaintiff, Travelers Property Casualty Company of America ("Travelers") under policy number ZYM-16N20711-20-ND, as Subrogee of Give It Away Sportfishing, LLC, sues the Defendant, Black Dog Marine, Inc., and states:

**JURISDICTION, PARTIES AND VENUE**

1. This is a claim within the Court's Admiralty and Maritime Jurisdiction pursuant to 28 U.S.C §§1331 (Federal Question) and 1333(1) (Admiralty, Maritime Cases) and 46 USC §§ 30501 *et seq.,* further not that this cause of action emanates from a vessel allision on the navigable waters of the United States at, or near, Jupiter, Florida.

2. Plaintiff further specifically invokes Rule 9(h) of the Federal Rules of Civil Procedure.

3. At all times material hereto, Plaintiff, Travelers under policy number ZYM16N2071120ND was the Insurer of the motor yacht "*Give It Away*" a 2005, 66-foot Spencer Motor Yacht (Official Number DO117313155).

4. At all times material hereto, the principal place of Travelers Property Casualty Insurance Company of America was, and is, in Hartford, Connecticut.

5. At all times material hereto, the named insured under the aforedescribed Policy of Insurance and the owner of the aforedescibed motor yacht was Give It Away Sportfishing, LLC, a Corporation organized and existing under the Laws of the State of Texas [Give It Away Sportfishing, LLC Corporate Domicile].

6. At all times material hereto, the Defendant, Black Dog Marine, Inc. ("Black Dog") was and is a Florida Corporation and was and is the owner and operator of the vessel "*Black Dog*" a 2005, 42' Wesmac Cabin motor yacht (Official Number DO1166399), which, upon information and belief is home ported in a marina at or near Love Street in Jupiter, Florida.

7. The incident giving rise to this Complaint occurred on July 11, 2020 on the navigable waters of the United States and specifically, the Intercoastal Waterway in Jupiter, Florida.

8. All conditions precedent to the bringing of this action have been waived, performed and/or been excused.

## FACTS COMMON TO ALL COUNTS

9. On July 1, 2020, the m/y "*Give It Away*" was properly and safely moored in its regular berth in Jupiter, Florida.

10 "*Give It Away*" was moored stern to dock with her bow facing the adjacent inlet, as were several smaller vessels at the same marina.

11.  *"Give It Away"* is a meticulously maintained private yacht.

12.  On the date and time of the allision giving rise to this claim at approximately 12:00 hours (according to the Florida Boating Accident Investigation Report prepared by the Florida Fish and Wildlife Conservation Commission), the sky was clear and the seas were calm.

13.  A stronger current ran at the bow of *"Give It Away"* which was well known to the Captain and crew of the *"Black Dog"* who transited this inlet almost daily.

14.  Notwithstanding first-hand, direct knowledge of regular tide and current conditions in the restricted inlet transited by the *"Black Dog"* (between her home berth and the Florida Intercoastal Waterway), on July 11, 2020, the Captain *"Black Dog"* (William J. Taylor) ignored known current conditions and attempted to enter the Intercoastal Waterway by passing *"Give It Away"* and other passively moored vessels at the same marina at an unsafe distance.

15.  In the course and scope of this dangerous navigation, the *"Black Dog"* became caught in a current when a third unidentified but properly navigating vessel transiting the Intercoastal, precluded *"Black Dog"* from entering into the Intercoastal.

16.  As a direct result of his foreseeable inability to enter into the Intercoastal, *"Black Dog's"* Captain cut power to his vessel at which point the local current overcame the *"Black Dog"* sweeping her into the port side bow area of *"Give It Away."*

17.  The allision between *"Black Dog"* and the passively moored *"Give It Away"* resulted in scratching and damage to the *"Give It Away's"* hull.

18.  Due to the unavailability of possible painting cut lines on the starboard side of the vessel and damage to the painted service of the bow itself, the entire hull of *"Give It Away"* needed to be repainted to restore her to her pre-casualty condition.

19.     "Black Dog" and/or its insurer has refused to accept the cost of full repainting, instead offering to repaint the port side only, an option understandably refused to "*Give it Away's*" owner and its insurer/plaintiff.

20.     As a direct result of the sole negligence of the "*Black Dog,*" All Underwriters Subscribing to Policy of Insurance Number ZYM16N2071120ND paid it's insured, Give It Away Sportfishing, LLC, the sum of $118,615.20

21.     The simple fact remains that "*Give It Away*" was safely moored in her home slip when struck and damaged by the negligently operated "*Black Dog*" resulting in damages sustained by her insurers and owners attendant with full hull repainting at the "Give It Away."

## **COUNT I – NEGLIGENCE**

22.     Plaintiff adopts and realleges Paragraphs 1 through 21 above as though fully set forth herein and further state:

23.     This is a cause of action for Negligence.

24.     At all times material hereto, the *"Black Dog"* and her owner, operator, captain and crew had a non-delegable duty to safely operate and navigate their vessel at all times and to prevent damage to other vessels' object, her passengers and crew.

25.     On July 11, 2020, the Captain of the "*Black Dog*" breached his duty of safe navigation and operation by negligently transiting the navigable waterway where "*Give It Away*" was passively moored in her slip adjacent to the Intercoastal Waterway.

26.     Specifically, notwithstanding full knowledge and familiarity with tidal conditions and currents in the aforedescibed inlet arising from the daily operation of their vessel in said inlet, at approximately 12:00 hours, when attempting to enter into the Intercoastal Waterway, the "*Black Dog*" passed to close to "*Give It Away*" and became caught in a current when attempting to enter

the Intercoastal, causing the Captain and crew of the "*Black Dog*" to lose control of their vessel resulting in her allision with the "*Give It Away*".

27. As a direct and proximate result of the breach of their duty of safe navigation and operation, "*Give It Away*" while passively docked, was struck by the "*Black Dog"* and sustained damage to her paint work in the bow stem and port side of her hull, necessitating the repainting of the entire hull due to inability to match the port and starboard sides of the vessel.

WHEREFORE, All Underwriters demand damages from Black Dog Marine, Inc. for the full cost of the repainting of "*Give It Away*" and any and all additional relief that this Court deems just and proper including taxable costs.

## COUNT II – UNSEAWORTHINESS

28. Plaintiff adopts and realleges Paragraphs 1 through 21 above as though fully set forth herein and further state:

29. This is a cause of action for Unseaworthiness.

30. At all times material hereto, lack Dog Marine, Inc., , as the owner of the "*Black Dog*" had a non-delegable duty to provide a competent master and crew.

31. Unseaworthiness, in turn, can be caused by insufficient manning of a vessel or an incompetent crew and/or crew member who are not reasonably fit for their service.

32. On July 11, 2020, the "*Give It Away*" was unseaworthy for one or more of the following reasons:

   a. Insufficient crew to prevent a low speed allision such as the one between the "*Black Dog*" and "*Give It Away*";
   b. Unfamiliarity with the tides and currents in the inlet transited by the "*Black Dog*";
   c. Ignoring dangerous conditions in the form of strong currents such as the current in the inlet where *Elandess* was docked and which swept the "*Black Dog*" into the "*Give It Away*";

    d.    Failing to maintain control of the "*Black Dog*" once she became caught in the current which swept the "*Black Dog*" into the "*Give It Away*"; and/or

    e.    Traveling to close to "*Give It Away*" in the inland passage between the "*Black Dog's*" home berth and the Intercoastal Waterway.

33.    As a direct and proximate result of the unseaworthiness of the "*Black Dog*" on July 11, 2020, at approximately 12:00 hours, "*Give It Away*" was damaged.

## COUNT III – LOUISIANA RULE NEGLIGENCE

34.    Plaintiff adopts and realleges Paragraphs 1 through 21 above as though fully set forth herein and further state:

34.    This is a cause of action for Louisiana Rule Negligence.

35.    At all times material hereto, the *"Black Dog"* and her owner, operator, captain and crew had a non-delegable duty to safely operate and navigate their vessel at all times and to prevent damage to other vessels' object, her passengers and crew.

36.    On July 11, 2020, the Captain of the "*Black Dog*" breached his duty of safe navigation and operation by negligently transiting the navigable waterway where "*Give It Away*" was passively moored in her slip adjacent to the Intercoastal Waterway.

37.    Specifically, notwithstanding full knowledge and familiarity with tidal conditions and currents in the aforedescibed inlet arising from the daily operation of their vessel in said inlet, at approximately 12:00 hours, when attempting to enter into the Intercoastal Waterway, the "*Black Dog*" passed to close to "*Give It Away*" and became caught in a current when attempting to enter the Intercoastal, causing the Captain and crew of the "*Black Dog*" to lose control of their vessel resulting in her allision with the "*Give It Away*".

38.    As a direct and proximate result of the breach of their duty of safe navigation and operation, "*Give It Away*" while passively docked, was struck by the "*Black Dog"* and sustained

damage to her paint work in the bow stem and port side of her hull, necessitating the repainting of the entire hull due to inability to match the port and starboard sides of the vessel.

39. Under the Louisiana Rule, when a moving ship strikes and damages a stationary object, including another vessel, it is presumed the moving ship is at fault.

40 Equally, under the Louisiana Rule, when a moving ship, in this case the "*Black Dog*" strikes a stationary object, in this case the "*Give It Away*" not only is the moving vessel presumed to be at fault, but also all parties who participated in the management of the vessel.

41. As a direct and proximate result of the "*Black Dog's*" alision with the "*Give It Away*", "*Black Dog*" and its operators and managers are at fault and liable for all resulting damages sustained by "*Give It Away.*"

WHEREFORE, All Underwriters demand damages from Black Dog Marine, Inc. for the full cost of the repainting of "*Give It Away*" and any and all additional relief that this Court deems just and proper including taxable costs.

Dated this 14th day of March 2022.
Respectfully Submitted,

                                                 **Campbell Johnston Clark, LLP**
                                                 *Attorneys for the Plaintiff*
                                                 2600 Douglas Road, Suite 508
                                                 Coral Gables, FL  33134
                                                 Tel. : 786-204-3784
                                                 Email: neil@cjclaw.com
                                                 Email: chase@cjclaw.com
                                                 Email: cindy@cjclaw.com

By:      /s/ Neil Bayer
          Neil Bayer, Esq.
          Fla Bar No.: 615684
By:      /s/Chase Alexandra Jansson
          Chase Alexandra Jansson, Esq.
          Fla Bar No.: 1002265